Samuel M. KAYNARD, Petitioner,

v.

LOCAL 282, INTERNATIONAL BROTH-
ERHOOD OF TEAMSTERS, CHAUF-
FEURS, WAREHOUSEMEN AND
HELPERS OF AMERICA, Respond-
ents.

No. 61-C-673.

United States District Court
E. D. New York.

Jan. 16, 1962.

George J. Brannick, Washington, D. C.,
for petitioner.

Morris Gaines, Valley Stream, N. Y.,
for Acme Concrete & Supply Co.

Cohen & Weiss, New York City, for re-
spondents, Herbert A. Levy, New York
City, of counsel.

RAYFIEL, District Judge.

On or about September 6, 1961, Acme
Concrete and Supply Corp., (Acme) al-
leging that the respondent, a labor or-
ganization within the meaning of Sec-
tions 2(5), 8(b) and 10(*l*) of the National
Labor Relations Act, (The Act) had en-
gaged and was then engaging in unfair
labor practices within the meaning of
Section 8(b) (4) (i) (ii) (B) of the Act
(Section 158(b) (4) (i) (ii) (B) of Title
29 United States Code Annotated), filed
charges against it with the National La-
bor Relations Board (the Board).

Section 158(b) (4) (i) (ii) (B), su-
pra, provides that "It shall be an unfair
labor practice for a labor organization
or its agents to engage in, or to induce
or encourage any individual employed by

any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title; Provided, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing."

Acme's charge was referred to the petitioner, then Acting Regional Director of the Second Region of the Board, who, after conducting an investigation of the charges, concluded that there was reasonable cause to believe that the respondent had engaged in the unfair labor practices charged, and that a complaint based thereon should issue. The petitioner, acting pursuant to Section 10($l$) of the Act (Section 160($l$) of said Title), has now moved for appropriate injunctive relief pending the Board's determination of the charges filed by Acme.

A brief statement of the factual background of the controversy between the respondent and Twin County Transit Mix, Inc., (Twin County) the struck employer, will help clarify the issues herein. Acme is the owner of the premises situated on the southeast corner of Terry Road and Hillcrest Drive West, in Smithtown, Suffolk County, Long Island, having a frontage of upwards of 400 feet on Terry Road, and being irregular in dimensions.

It acquired title thereto by deed recorded in the Suffolk County Clerk's Office on July 6, 1960, executed and delivered by Ejoro Realty Corp., the President of which, it should be noted, was Jack Muratore and the Vice-President Anthony Muratore. On the said premises are located a hopper for storing and dispensing cement and other materials used in the processing of concrete, and a two-story structure in the lower floor of which it maintains its office. At the times hereinafter mentioned, and for some time prior thereto, Twin County was engaged in the business of selling and transporting concrete to builders and contractors at various construction sites on Long Island. It occupied part of the lower floor of said building as its office, where it had telephone and other facilities, and its name was conspicuously displayed on the building. It had in its employ seven drivers who operated its transit-mix trucks, all of which were stored on the Acme premises during the night and at all other times when not actually in use for the transportation of concrete. It paid no rent to Acme for its office space or for the storage of its trucks. It may be, however, that those services or facilities were provided as an accommodation to Twin County, which purchased a very substantial part of its concrete-making materials from Acme.

In July, 1961 there occurred a work stoppage in the cement and concrete industry because of the inability of the employers and the respondent to agree on the terms of a renewal of their collective bargaining agreement. Although Twin County had no such agreement with the respondent, the latter had been designated as their representative by a majority of its drivers.

A strike followed in the industry in the New York metropolitan area early in July and four of Twin County's drivers, members of the respondent union, informed its President that they would not work during the strike. The strike continued during the month of July and about three weeks in August, when a settlement was effected between the em-

ployers and the respondent, and the employees involved in the strike returned to work. But Twin County refused to re-engage those of its employees, members of the respondent union, who had refused to work after the strike was called and during its continuance.

The Acme property was not surrounded by a fence, and ingress and egress to and from the premises by *its* trucks and those of its suppliers and customers, including Twin County, was provided by two driveways, about 100 feet apart, used interchangeably by the aforementioned. Prior to the settlement pickets had been stationed by the respondent on Terry Road, adjacent to the said driveways. They carried signs reading: "Teamsters Local 282 Members locked out by Twin County Transit Mix—This Employer refuses to bargain with Local 282. Our sole objective is to return to our jobs."

After the strike had been settled Acme had a third driveway installed, located upwards of 100 feet from one of the aforementioned driveways. The respondent concedes that it then extended its picketing activities to the entrance to the third driveway. Photographs received in evidence show a sign posted at the entrance to said driveway upon which appears the following legend:

Acme Concrete
and Supply Corp

Ready Mix Concrete     Plant pick up
Mason Supplies sand gravel bank run
(Illegible)
Phone AN drew 5–6550

That sign appears to have been erected prior to the picketing activities of the respondent. Affixed to that sign in the lower left-hand corner thereof is another very small sign—attached some time subsequently—upon which appear the words "Acme entrance".

The respondent contends, inter alia, (1) that Acme is not a neutral employer, and hence is not entitled to the protection of the secondary boycott provisions of the Act, and (2) that since Acme and Twin County occupy the same premises the respondent's picketing was "primary", but that if it should be found that the Acme premises were "secondary", then the picketing was permissible under the "common situs" doctrine. (Moore Dry Dock Co., 92 N.L.R.B. 547).

It is my opinion that the following facts support the first contention. As hereinabove stated Jack Muratore and Anthony Muratore were President and Vice-President respectively of Ejoro Realty Corp., Acme's grantor. Joseph Muratore is employed by Twin County. Jack Muratore is employed by Acme, whose President is Anthony Muratore, and whose entire capital stock is owned by Elizabeth Muratore, the wife of Joseph Muratore, who, as aforementioned, is employed by Twin County. Anthony Muratore and his parents occupy the upper floor of the two-story building on the premises as their residence. Further, on at least two occasions Acme loaned money to Twin County to meet the latter's payrolls. While those facts, together with others advanced at the hearing, do not establish *common ownership or control* of Acme and Twin County, as claimed by the respondent, it is my belief that there was ample evidence of such *identity and community of interests* as would negative the claim that Acme is a neutral employer. Local No. 24, etc., v. National Labor Relations Board, 105 U.S. App.D.C. 271, 266 F.2d 675.

I agree also with the respondent's second contention. There was, for the most part, common occupancy of the premises. That was particularly true of the two original driveways, both of which had been used by Twin County, Acme and the latter's suppliers and customers. The third driveway, from the photographs received in evidence, appears to have been merely a temporary expedient. It may be added that the position which the Board takes here is inconsistent with its position in McLeod (J. J. White, charging party) against the respondent herein. I believe the picketing in the instant case was primary picketing. See Local 761, International Union of Electrical,

etc. v. National Labor Relations Board et al., 366 U.S. 667, 81 S.Ct. 1285, 6 L.Ed.2d 592.

Quite apart from the foregoing, a careful reading of the record herein disclosed no evidence whatsoever of the violation by the respondent of the B provision of Section 8(b) (4) of the Act. The picketing activities engaged in by its agents were clearly within their rights under Section 9 of the Act.

Accordingly, the Board's motion for a temporary injunction is denied. Submit, on notice, proposed order, findings of fact and conclusions of law.